IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES KUYKENDALL and | § | |
| DONNA KIRKWOOD, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-CV-00113-SH |
| | § | |
| LIBERTY INSURANCE CORPORATION, | § | |
| Defendant | § | |

**PLAINTIFFS' RESPONSE**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. 27]**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs James Kuykendall and Donna Kirkwood file this Response to Defendant's Motion for Summary Judgment [Doc. 27], and in support thereof would respectfully show this Court as follows:

## I. INTRODUCTION

Defendant's motion for summary judgment should be denied in part[1] because (1) the house insured by Defendant qualifies as "residence premises" as defined by the policy because Plaintiffs did "reside" there; (2) expert testimony on causation is not required in this case to prove that the damage to the house was caused by two covered events; and (3) a "bona fide" dispute is not a defense to claims under Texas Insurance Code Chapter 542.

[1] As noted below, Defendant has moved for summary judgment on a claim that Plaintiffs have not pled – misrepresentation under the Texas Insurance Code. Therefore, Plaintiffs will not oppose that portion of the motion.

## II. EVIDENCE SUPPORTING RESPONSE

Plaintiffs rely upon the following summary judgment evidence:

1. The evidence attached to Defendant's Motion for Summary Judgment;
2. Exhibit A: Excerpts from the deposition of James Kuykendall; and
3. Exhibit B: Affidavit of James Kuykendall.

## III. STATEMENT OF FACTS

Plaintiffs own the house at 2335 FM 504, Lohn, Texas, which is the house made the basis of this lawsuit and which was insured by Liberty. See Deposition of James Kuykendall, attached hereto as Exhibit "A", page 8, lines 13-19. They purchased it in 2010 or 2011. Kuykendall deposition, page 9, lines 11-12.

At the time the Plaintiffs purchased the house, it was in livable condition. A new roof had been installed just a couple of years before the Plaintiffs purchased the house. Kuykendall deposition, page 30, lines 1-9. The electricity worked from the time they purchased the house until the October 2021 storm. Kuykendall deposition, page 28, lines 5-15. It had nice carpet and hardwood flooring. Kuykendall deposition, page 28, lines 16-22. And it was sheetrocked inside. Kuykendall deposition, page 29, lines 12-13.

After purchasing the house, Plaintiffs made significant improvements to it: (1) They switched it from city water to well water. Kuykendall deposition, page 27, line 16 to page 28, line 4; (2) They replaced the plumbing. Kuykendall deposition, page 31, line 20 to page 32, line 12; and (3) They painted the house. Kuykendall deposition, page 32, lines 13-22.

During the years after they purchased the house and before the first of the two storms made the basis of this lawsuit, Plaintiffs spent significant time at the house on a regular basis. They spent every weekend at the house. Kuykendall deposition, page 10, lines 8-15; page 11, line 2 to page 12, line 15; page 33, lines 2-5; James Kuykendall Response to Interrogatory 8, attached as Exhibit C to Defendant's Motion for Summary Judgment; James Kuykendall Response to Request for Admission 1, attached as Exhibit D to Defendant's Motion for Summary Judgment. They also spent holidays at the house during that timeframe. Kuykendall deposition, page 11, line 2 to page 12, line 15; James Kuykendall Response to Interrogatory 8; James Kuykendall Response to Request for Admission 1. They celebrated Thanksgiving at the house each year and would spend four or five days there at Christmas. Kuykendall deposition, page 11, lines 18-24. They stayed at the house as long as seven or eight days at a stretch. Kuykendall deposition, page 12, lines 3-5. They have horses and cows at the property that they care for. Kuykendall deposition, page 10, line 16 to page 11, line 1.

During that timeframe, Plaintiffs kept food in the refrigerator and the freezer to eat when they were at the house. Affidavit of James Kuykendall, attached hereto as Exhibit "B". The house was fully furnished, the electricity was always on and working, and Plaintiffs received mail there. Kuykendall affidavit. They kept a tractor and hay in the garage and maintained a furnished workshop. Kuykendall affidavit. They also kept two donkeys, two horses and cattle on the property during that timeframe. Kuykendall affidavit.

## IV. ARGUMENTS AND AUTHORITIES

Defendant states four bases for its request for summary judgment – two related to Plaintiffs' breach of contract claim and two related to Plaintiffs' extra-contractual claims. On the

breach of contract claims Defendant claims that it's entitled to summary judgment because: (1) Plaintiffs did not "reside" at the property; and (2) the damage to the house was caused by normal wear and tear. On the extra-contractual claims, Defendant claims it's entitled to summary judgment because (1) there is a bona fide dispute regarding coverage; and (2) because Defendant made no actionable misrepresentation. The first three arguments fail and Defendant's motion for summary judgment on those grounds should be denied for the following reasons.

**A. "Resident Premises"**

Defendant argues that it is entitled to summary judgment because the house does not qualify as "residence premises" under the policy. The policy states that "residence premises" means "a. The one family dwelling where you reside…and which is shown as the "residence premises" in the Declarations." The policy does not use the words "residence premises" in the declarations, but it lists the house as the "insured location" there. See Liberty Mutual Policy, page 2, attached as Exhibit A-1 to Defendant's Motion for Summary Judgment.

Because the house is identified as the "residence premises" or "insured location" in the policy declarations, the question then is whether the Plaintiffs "resided" there. There is ample summary judgment evidence that Plaintiffs resided at the house. As stated above, Plaintiffs spent every weekend at the house for several years up until the first storm made the basis of this lawsuit, they spent holidays there, kept animals on the property that they cared for and spent as much as seven or eight days at a time at the house.

Defendant argues that's not enough, and that Plaintiffs did not "reside" in the house because it was not their primary residence. But that argument is not supported by the policy language or case law.

Under Texas law, "insurance policy interpretation principles emphasize a policy's plain language in determining its intended coverage." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 131 (Tex. 2010). Courts first "look at the language of the policy because we presume parties intend what the words of their contract say." *Id*. at 126. "The parties' intent is governed by what they said in the insurance contract, not by what one side or the other alleges they intended to say but did not." *Id*. At 127. Additionally, neither the parties nor the court can add words to the policy's language. *RSUI Indemnity Company v. The Lynd Company*, 466 S.W.3d 113, 124 (Tex. 2015), citing *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). But that's exactly what Defendant attempts to do.

The policy simply requires that the Plaintiffs "reside" at the house, but Defendant attempts to require that the house be Plaintiffs' only residence or "primary residence". But that's not what the policy says. If Liberty had wanted to require that the house could be covered only if it was the Plaintiffs' only residence or primary residence it could have stated that in the policy. It did not.

Defendant cites three cases in support of its "residence premises" argument and all three are distinguishable from the facts in this case.

In *Korbel*, the case most extensively discussed in Defendant's motion, the court found that the plaintiff did not "reside" at the house in question. *Korbel v. Lexington Ins. Co.*, 308 Fed. Appx. 800 (2009). In that case Korbel ate, bathed and slept at his parents' house, but sometimes slept at the house when he was working there late and was too tired to return to his parents' house." *Korbel*, 308 Fed. Appx. at 801. "At the time, the property was two-thirds gutted, lacked a finished kitchen (including refrigerator) and bathroom, contained minimal furniture, and received electricity via a temporary pole." Id. These facts are distinguishable from those in the instant case in which the

house was completely livable and the Kuykendalls spent significant time at the house on a regular basis.

In *Korbel*, the court stated, "Here, we look to the generally prevailing meaning of "reside" which is defined as "to dwell permanently *or for a considerable time*, to have one's settled or usual abode, to live, in or at a particular place." Korbel, 308 Fed. Appx. at 802 (emphasis added). Clearly, the Plaintiffs in this case dwelt in the house "for a considerable time" and therefore "resided" at the house qualifying it as the "residence premises" under the policy.

The other two cases cited by Defendant are even less on point with the facts in this case. In *Serpikova*, the Plaintiffs had moved out of the house and leased it to tenants, then renewed the policy, after which a fire damaged the house. *American Risk Ins. Co. v. Serpikova*, 522 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). In Greene, Plaintiff moved out of a house insured by Farmers to move into a retirement community. *Greene v. Farmers Insurance Exchange*, 446 S.W.3d 761, 762 (Tex. 2014) She notified Farmers that she was going to sell the house and provided a change of address. Id. More than sixty days later a fire destroyed the house. Id. The Texas Supreme Court upheld Farmers' denial of the claim based on the policy's vacancy clause. Greene, 552 S.W.3d at 770.

There do not appear to be any Texas state or federal court opinions directly on point with regard to the issue in this case – whether a policyholder can "reside" in more than one house for purposes of the "residence premises" language in the policy. However, there are at least two out of state cases that address this issue in a way that is supportive of coverage.

In *Bloxham v. Allstate Ins. Co.*, No. 3:19-CV-00481, 2020 WL 6710427 at *3 (M.D. Pennsylvania 2020), Bloxham insured his house with Allstate. The house was destroyed by fire and Allstate denied Bloxham's claim claiming that he did not "reside" at the subject property. Id.

Bloxham claimed that he resided at the Property between one and one half weeks out of the month and that the remainder of the time he lived with his mother. Id. There was significant summary judgment evidence that conflicted with Bloxham's claim of residencey. *Bloxham* at *4.

The court denied Allstate's motion summary judgment. In doing so, recognized that an individual could reside at multiple locations when time is consistently divided between multiple locations. *Bloxham* at *6, citing Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co., 545 A.2d 343, 348 (Pa. Super. 1988)

In *Skrelja v. State Automobile Insurance Company*, No. 15-CV-12460, 2016 WL 3385093, at *1 (E.D. Mich. 2016), the insurer denied Skrelja's homeownes claim because he didn't live at the house and it therefore did not meet the policy definition of "residence premises." Skrelja sued and the parties filed competing motions for summary judgment. Id.

Skrelja provided evidence that he made repairs to the house and split his time between the house at issue and his parents' house. Skrelja at *3. In finding that the evidence was enough to prove that Skrelja "resided" at the house, the court stated, "Defendant does not point to any policy language, or to any case law interpreting the terms "dwelling" or "residence premises" to suggest that plaintiff was required, lest coverage be denied, to live solely at the Fantasia property or to spend a certain minimum number of hours thereon a daily or weekly basis, or to sleep there, or to eat particular meals there, or to have his mail delivered there, or to keep any particular amount of clothing or furniture there." Id.

The court in Skrelja went on to say, "Defendant has not shown that plaintiff was not living there, and plaintiff has shown the contrary. The evidence clearly shows that plaintiff was living both at the Fantasia property and at the Monticello property at the time of the March 2014 loss, as he was spending his days at the former and eating dinner and sleeping at the latter. Defendant

points to no authority suggesting that plaintiff may reside/live/dwell at only one house." Id. On that basis the court denied the insurance companies MSJ and granted Plaintiff's cross motion for summary judgment. Skrelja at *4.

### B. No Expert Testimony on Causation is Required in this Case

Defendant next argues that it is entitled to summary judgment because the damage to the house was caused by normal wear and tear. They cite to their expert's opinion on this point and state that they must prevail because Plaintiffs' experts do not refute this opinion regarding causation.

As set forth at length in Plaintiffs' response to Defendant's motion to strike, expert testimony on causation is not required in this case. There is ample evidence of the cause and effect relationship between the two storms at issue in the case, the two large trees that those storms knocked down and which hit the house, and the damage caused to the house. Because of that common sense causal connection, no expert testimony is required and therefore summary judgment would be improper on that point.

### C. Prompt Pay Claim

Defendant moves for summary judgment on Plaintiffs' prompt pay claims[2] on the basis that there is a "bona fide dispute" over coverage. The existence of a bona fide dispute is not a defense to a claim under Chapter 542 of the Texas Insurance Code.

In order to prove a claim under chapter 542, a plaintiff must prove that (1) it had a claim under an insurance policy; (2) it gave proper notice of its claim; (3) the insurer is liable for the

---

[2] See Plaintiffs' First Amended Complaint [Doc. 21], paragraph 12.

claim; and (4) the insurer violated chapter 542 by not timely…(3) paying the claim. Tex. Ins. Code §542.051, 542.057; *Barbara Techs v. State Farm Lloyds*, 589 S.W.3d 806, 812 (Tex. 219).

Defendant cites the *Higginbotham* case for the proposition that "a bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim" and that such bona fide dispute can relieve the insurer from liability for the tort of bad faith. *Higginbotham v. State Farm Mut. Ins. Co*., 103 F.3d 456, 459 (5th Cir. 1997). But a bona fide dispute does not relieve an insurance company of potential liability under the prompt pay statute. In fact, in the *Higginbotham* case, the Fifth Circuit held that State Farm was liable for the 18% penalty under the prompt pay statute for rejecting the claim and, therefore, failing to pay it within 60 days. *Higginbotham*, 103 F.3d at 461.

**D. Actionable Misrepresentations**

As stated in Defendant's Motion for Summary Judgment, Plaintiffs have not plead a cause of action for misrepresentation under the Texas Insurance Code. Plaintiffs, therefore, will not respond to this portion of Defendant's motion.

## V. CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for summary judgment.

Respectfully submitted,

_*/s/Jon Smith*___________________
JON MICHAEL SMITH
State Bar No. 18630750
3305 Northland Drive
Suite 500
Austin, Texas 78731
Telephone: (512) 371-1006
Facsimile: (512) 476-6685
jon@jonmichaelsmith.com

***ATTORNEY FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I, Jon Michael Smith, do hereby certify that pursuant to Fed.R.Civ.P.5, a true and correct copy of the foregoing document has been forwarded via the Case Management / Electronic Case Files ("CM/ECF") system and via email on January 12, 2024, to the following counsel of record:

Catherine L. Hanna — channa@hannaplaut.com
Derick W. Lancaster — dlancaster@hannaplaut.com
HANNA & PLAUT, LLP
211 East Seventh Street
Suite 600
Austin, Texas 78701
***ATTORNEYS FOR DEFENDANT***

__*/s/Jon Smith*_____________
Jon Michael Smith